# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

ARTISTIC STONE CRAFTERS, INC.,   *

                          *

        Plaintiff,         *

                          *

        v.                *          CV 108-153

                          *

SAFECO INSURANCE COMPANY OF   *
AMERICA and TORESO          *
CORPORATION,              *

                          *

        Defendants.       *

---

## O R D E R

---

Before the Court is Defendants' Rule 12(b)(3) motion to dismiss or, in the alternative, transfer venue of this case. (Doc. no. 13.) Plaintiff opposes the motion, and Defendants have replied. (Docs. no. 19, 27.) For reasons discussed below, the case shall be transferred to the United States District Court for the Eastern District of Virginia, Norfolk Division, and shall not be dismissed.

## I. Background

This is a construction lawsuit arising out of a subcontractor agreement between Toreso, a Virginia corporation

and general contractor (Toreso), and Artistic Stone Crafters, Incorporated, Toreso's North Carolina subcontractor (Artistic). The subcontract was one to complete tile work inside a federal building, specifically, a kitchen at the Federal Law Enforcement Training Facility (FLETC) in Glynco, Georgia, with Artistic performing the tile work, and Toreso paying Artistic.

The underlying construction contract was between Toreso and the United States government. Because the underlying construction contract is with the federal government, this lawsuit has been brought under, *inter alia*, The Miller Act, 40 U.S.C. § 3131-3134, a federal statute mandating the presence of surety bonds in federal construction projects. Toreso's bond company was Safeco Insurance Company of America (Safeco), a Washington corporation, joined as a defendant to this action. Toreso and Safeco are hereinafter referred to as Defendants.

When this lawsuit was originally filed, Artistic identified the wrong construction project in its complaint. (Compl. ¶ 6, Doc. no. 1.) Instead of alleging the project known as "Kitchen Venthood Retrofit, Toreso Project Number 14695-01A-ARTST-6260-LW Prime Contract Number LGL05D00013 D.O. GL06J513001", the subject of this lawsuit, Artistic's complaint referred to a project known as "Construct Building 218 FLETC, Glynco, Georgia 31524". (Pl.'s Mot. to Amend at 1, Doc. no. 8.) Defendants apparently realized Artistic's error, because, in December of 2008,

Defendants filed an answer that refers to the correct project. (Answer ¶ 8, Doc. no. 4.) The error was thus brought to Artistic's attention by December of 2008. Electing not to amend its complaint at this point, Artistic proceeded with the case as originally plead.

The parties engaged in discovery based upon an assumption that the claims arose from the Kitchen Venthood Retrofit project, the only project Artistic and Toreso had worked on together. Several months later, in April of 2009, Artistic filed an unopposed motion to amend its complaint in order to correct its error. (Doc. no. 8.) A few weeks later, on May 8, 2009, before the Court ruled on Artistic's motion to amend, Defendants moved to amend their answer, provided the court granted Artistic's motion to amend its complaint. (Doc. no. 9.)

Along with Defendants' motion to amend, Defendants filed a proposed answer and counterclaim, which included the affirmative defense of improper venue. Artistic opposed Defendants' motion to amend. (Doc. no. 10.) The venue defense is based upon a forum selection clause included within Artistic and Toreso's subcontract. (Def.'s Mot. to Amend, Ex. A ¶¶ 2-3.) The forum selection clause, paragraph 13.3 of the Artistic subcontract, marked Exhibit 1 and attached to Exhibit A to Toreso's motion to amend (doc. no. 9), states:

13.3    SUBCONTRACTOR agrees that all other claims related in any way or manner to the Subcontract Work or this Subcontract not included in subparagraphs 13.1 or 13.2, above, shall be litigated in the Circuit Court of the City of Virginia Beach, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division, regardless of the location of SUBCONTRACTOR'S work or the Project. The parties hereto expressly consent to the jurisdiction and venue of said Courts and acknowledge that they may be waiving rights they might otherwise have to bring suit in any other venue. The parties further agree that all disputes under this Subcontract shall be determined and interpreted pursuant to the laws of the Commonwealth of Virginia.

On June 8, 2009, and before the Court ruled on either motion to amend, Defendants filed a separate motion to dismiss or transfer this case based on the forum selection clause. (Doc. no. 13.)

On June 29, 2009, the United States Magistrate Judge granted both Artistic's and Defendants' motions to amend their pleadings. (Doc. no. 24.) Artistic then timely filed an amended complaint referencing the correct construction job (Am. Compl. ¶ 6, doc. no. 28) and Defendants timely filed an amended answer, alleging, *inter alia*, the affirmative defense of improper venue (Am. Answer at 1, doc. no. 30). The Court now takes up the motion to dismiss or transfer this case from the Southern District of Georgia, based upon the contractual forum selection clause.

## II. Discussion

### A. Proper Construction of this Motion

The Court must first decide whether to construe Defendants' motion as either a motion to dismiss for improper venue, or as a motion to transfer venue.[1] This question is presented both because Defendants have asked for alternative relief—dismissal or transfer—and because, as here, when a forum selection clause dictates that litigation within the clause's scope shall proceed in a particular state or court, district courts are divided as to whether motions such as these should be construed as motions to dismiss, or as motions to transfer. See Stiles v. BP Express, Inc., No. 409CV028, 2010 WL 28531, at *1 (S.D. Ga. Jan. 5, 2010) (noting this split and stating that courts in this District have decided to consider the motions as those seeking transfer) (citing Gen. Pump & Well, Inc. v. Laibe Supply Corp., No. CV607-30, 2007 WL 4592103, at *2-3 (S.D. Ga. Dec. 28, 2007) (noting same split and deciding to construe a similar motion as a motion to transfer venue)).

---

[1] The Court has the ability under federal law to dismiss a case brought in an improper venue. See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). The Court also has the ability to transfer a case brought in an improper venue. See 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

Because there is a proper venue in which to transfer this case, the United States District Court for the Eastern District of Virginia, Norfolk Division,[2] transferring this case, not dismissing it, is in line with Eleventh Circuit law. See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289-90 (11th Cir. 1998). Therefore, the Court, pursuant to the precedent set by the Eleventh Circuit and in accordance with its fellow courts in the Southern District of Georgia, construes this motion as one to transfer venue.

## B. Whether Defendants have Waived the Venue Defense

Having construed the motion as one to transfer this case, the Court next considers whether the venue defense has been properly preserved for consideration, or whether the defense has been waived. The affirmative defense of improper venue brought by Rule 12(b)(3) motion must be raised in the asserting party's first responsive pleading—the answer or a Rule 12(b) motion; if not, the defense is waived. See Fed. R. Civ. P. 12(h). However, when parties are granted leave to amend their pleadings, such as in the case *sub judice*, and the amendment adds a new matter that

---

[2]    Defendant Toreso is a corporation formed under the laws of Virginia, and was at the time this action originally commenced. (Compl. ¶ 4, Doc. no. 1; Answer ¶ 4, Doc. no. 4.) Toreso is, therefore, subject to personal jurisdiction in Virginia. Toreso also therefore resides in Virginia for purposes of venue. See 28 U.S.C. § 1391(b) and (c). Further, Artistic, as well as Toreso, consented to personal jurisdiction and proper venue in Virginia by executing the subcontract. Safeco is discussed further, below.

gives rise to a new, previously inapplicable Rule 12 motion, the responding party may assert the new Rule 12 defense by motion or responsive pleading. 48 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1347 (3d ed. 2004).

Defendants timely answered the amended complaint, and asserted the venue defense therein. This was Defendants' first responsive pleading under Rule 12, once the 12(b)(3) defense became applicable to this case. Before Artistic's amendment, Rule 12(b)(3), which is based upon the forum selection clause in the Artistic subcontract, was inapplicable. Before that time, the Artistic subcontract was not properly incorporated into the lawsuit. Moreover, Defendants raised the venue defense earlier than required under Rule 12 by asserting it both in their motion to amend their answer and their motion to transfer. These motions preemptively sought relief, depending on whether the Court granted Artistic leave to amend its complaint.

Artistic's argument that the venue defense should have been raised *even earlier* in the case fails. If Artistic had its way, Defendants would be forced to bear the burden of seeing through Artistic's pleading error and responding to allegations that were never made. Artistic essentially asserts that Defendants should have raised their venue defense in the initial answer, assuming the Kitchen Venthood Retrofit project was the correct

7

project.[3] Short of this, Artistic would have Defendants' venue defense waived. The Court will not go so far. To the extent Artistic argues that it is inequitable to transfer this case since discovery is complete, it actually occasioned the delay by waiting from December, 2008 to April, 2009 to amend its complaint. See Clisham Mgmt., Inc. v. Am. Steel Bldg. Co., Inc., 792 F. Supp. 150, 160 (D. Conn. 1992) (transferring venue after discovery had been completed in the case based on a valid forum selection clause in a contract dispute).

## C. Whether Plaintiff's Claims Fall Within the Forum Selection Clause

Though the parties have chosen not to address the issue, the Court wishes to comment on whether Plaintiff's asserted claims lie within the forum selection clause's scope. The Eleventh Circuit, as well as district courts within the circuit, including the Southern District of Georgia, have afforded forum selection clauses' broad terms a congruous broad interpretation. See Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066, 1070 (11th Cir. 1987); General Pump & Well, Inc., 2007 WL 4592103, at *3-4 (collecting District Court cases from the Eleventh Circuit

---

[3] The Court would question the propriety of such a motion at that point because the subcontract containing the forum selection clause, the basis for the motion, would not have been properly incorporated into the lawsuit. Also, Defendants did, in their initial answer, reserve the right to assert any newly applicable defenses it may have by virtue of Plaintiff amending its complaint, and specifically referenced defenses relating to the correct project. (Answer ¶¶ 26-7, Doc. no. 4.)

applying a broad construction of forum selection clauses and applying a broad interpretation itself).

All causes of action asserted in this case, including Toreso's counterclaim, stem from the Artistic-Toreso construction subcontract: state law breach of contract, state law quantum meruit, federal Miller Act bond statutory cause of action, counterclaim for breach of the subcontract, and claims for attorney and litigation fees by both parties. (Am. Compl. ¶¶ 16-32; Am. Answer at 5-6.) The forum selection clause in this case is written sufficiently broad to encompass the causes of action asserted: "all other claims related in any way or manner to the Subcontract Work or this Subcontract . . . " (¶ 13.3 Artistic Subcontract, Ex. A to Def.'s Mot. to Dismiss or Transfer.) See Stewart, 810 F.2d at 1073 n.4 (Tjoflat, J., concurring) (holding "any case or controversy arising under or in connection with this Agreement" sufficiently broad for causes of action in breach of contract case); In re Fireman's Fund Ins. Cos., 588 F.2d 93 (5th Cir. 1979)[4] (holding "any suit or action for the enforcement of any of the obligations under this agreement" sufficiently broad for causes of action in Miller Act case). The forum selection clause covers the entirety of the suit here.

---

[4]    Fifth Circuit decisions handed down prior to October 1, 1981, are binding in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

## D. Whether Transfer is Appropriate

Having determined that Plaintiff's motion is a motion to transfer venue, properly before the court, and that the forum selection clause governs the claims asserted in this lawsuit, the Court now turns to whether transfer is appropriate under the law. The federal transfer of venue statute, 28 U.S.C. § 1404(a), provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In the Eleventh Circuit, the presence of a valid forum selection clause provides nearly conclusive weight favoring a transfer when a § 1404(a) motion is properly asserted. In re Richo Corp., 870 F.2d 570, 573 (11th Cir. 1989), remanded from Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 (1988). Other § 1404(a) factors are considered, but rarely outweigh a valid forum selection clause. Id.

Forum selection clauses are presumptively valid and enforceable, with the party opposing the clause's application having the burden to show, under the circumstances, that enforcing the clause would be unfair, unreasonable, or sufficiently inconvenient to justify retention of the suit. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-95 (1991), legislatively overruled on other grounds by 46 U.S.C § 30509; M/S Bremen v. Zapata Off Shore Co., 407 U.S. 1, 10

10

(1972), _overruled on other grounds by_ Lauro Lines v. Chasser, 490 U.S. 495, (1989); In re Richo Corp., 870 F.2d at 573. Artistic's sole contention in this regard is that it is too late to transfer this case. This argument has been dealt with above. As already discussed, Artistic has failed to show that, under the circumstances here, enforcing the forum selection clause would be unfair, unreasonable, or sufficiently inconvenient to justify retention of the suit. Further, although Artistic does not contest the validity of the forum selection clause, there is no evidence, whatsoever, showing that the forum selection clause was not freely entered into by two sophisticated business parties, as the result of arm's length dealing. The forum selection clause here is valid.

The Court is satisfied that the agreed upon Virginia forum will be convenient for both Artistic and Toreso, the signatories to the subcontract providing Virginia as the chosen forum. The Court also recognizes that there is another party to this action—Safeco Insurance, dealt with now.

### E. Whether Safeco, a Surety, May Enforce the Forum Selection Clause

Artistic argues that the forum selection clause may not be asserted by Safeco, Toreso's construction bond company and surety, because, according to Artistic, Safeco is not a party to

11

the subcontract. Artistic contends that the Court may only transfer Toreso to Virginia. With Safeco left in Georgia, the resulting inconvenience of the parties supports the denial of a transfer. As support for this argument, Artistic cites two cases, U.S. Fid. and Guar. Co. v. West Point Constr. Co., 837 F.2d 1507 (11th Cir. 1988) and Portland Constr. Co. v. Weiss Pollution Control Corp., 532 F.2d 1009 (5th Cir. 1976). Both cases address whether Miller Act bond sureties are bound by arbitration clauses in contracts between their principals and the principal's subcontractors. These cases establish that, if the performance bond does not incorporate by reference the subcontract containing the arbitration clause, as in Weiss, then the arbitration clause does not apply to the surety. Equally true, if the subcontract is incorporated by reference into the bond, as in West Point, then the arbitration clause does apply to the surety.

Artistic would have the Court extend the reasoning of these cases to forum selection clauses, and find that, because Safeco's bond with Toreso does not incorporate by reference the Artistic subcontract, Safeco may not avail itself of the forum selection clause. The Court declines to do so. While it is true that the payment bond agreement between Safeco and Toreso does not incorporate by reference the Artistic subcontract (Res. to

12

Def.'s Mot. to Dismiss or Transfer, Ex. A), this fact does not preclude Safeco from asserting the defense of improper venue.

The Weiss and West Point courts focused on the issue of waiving causes of action in federal court by contractually agreeing, ahead-of-time, to arbitrate disputes. Specifically, the issue was substituting a subcontractor's Miller Act remedy obtained in the federal courts for an arbitral remedy obtained privately. The Weiss court concluded that, because the bond surety in that case, Argonaut, was not a "party" to the subcontract, Argonaut could not be involuntarily joined to the arbitration proceeding by and through the arbitration clause, and that, consequently, the subcontractor's only remedy against the surety was in federal court. Id. at 1012. In West Point, the court reasoned that because the surety's bond agreement with the general contractor incorporated by reference the underlying subcontract which included an arbitration clause, this "expresses an intention of the parties, including [the surety], to arbitrate disputes." Id. at 1508. When combined with the strong policy in favor of arbitrating disputes expressed by Congress in the Federal Arbitration Act, the court held the surety was bound to arbitrate under the clause. Id. These cases are not conclusive of the issue here.

Safeco's status as a surety of Toreso places Safeco in privity with Toreso and endows Safeco with all the defenses and

benefits Toreso is entitled to, including the forum selection clause voluntarily agreed to by the general contractor and subcontractor. Moreover, Safeco does not oppose transferring this case to Virginia. Indeed, Safeco has moved in conjunction with Toreso for transfer of venue of this case. Judicial concerns of waiving federal causes of action in favor of arbitration, present in Weiss and West Point, are simply not present here.

Other federal courts facing this very issue have concluded that a federal Miller Act construction bond surety is entitled to the benefit of a valid forum selection clause without regard to Weiss or West Point's concerns over express incorporation of the clause, or lack thereof, in the bond. For example, in Arrow Plumbing and Heating, Inc. v. North Am. Mech. Servs. Corp., 810 F. Supp. 369, 372 (D.R.I. 1993), the district court rejected the argument that a bond surety defendant cannot invoke a forum selection clause in its principal's subcontract in a Miller Act case, reasoning that

> Although a surety is not a party to a subcontract agreement, its liability under a payment bond is determined by the agreements between its principal and the subcontractor. The surety therefore should have all the benefits and suffer all the disadvantages that would accrue to the general contractor under those agreements.

Arrow Plumbing and Heating, 810 F. Supp. at 372. See also Concrete Indus., Inc. v. Dobson Bros. Const. Co., No. 06-1325-

WEB, 2007 WL 1455979, at *5 (D. Kan., May 17, 2007) ("A surety has the same defenses as a principal. A surety can plead any defenses available to its principal but could not make a defense that could not be made by its principal. Western Surety, [a construction bond company,] is also entitled to enforcement of the forum selection clause.") (citations omitted); Fireman's Fund Ins. Co. v. Frank Briscoe Co., Inc., 462 F. Supp. 114, 116-17 (E.D. La. 1978) (allowing surety to enforce forum selection clause in Miller Act case and distinguishing Weiss). The Court agrees with the reasoning of these cases, and concludes that Safeco may assert the forum selection clause in this case.

The remaining issue regarding Safeco is whether it will be subject to personal jurisdiction and proper venue in Virginia. Safeco, by requesting transfer to the United States District Court for the Eastern District of Virginia, Norfolk Division, and by stepping into the shoes of Toreso which submitted to jurisdiction and venue in said court, has consented to personal jurisdiction and venue in the United States District Court for the Eastern District of Virginia, Norfolk Division. The Court is also satisfied that Virginia is a forum convenient for Safeco, as, again, Safeco has moved to transfer venue to Virginia, and stands in the shoes of Toreso.

## F. Impact of the Miller Act's Venue Provisions

Finally, Artistic claims the Miller Act's venue provision, 40 U.S.C. § 3133(b)(3), requires that this suit proceed in the Southern District of Georgia, where the subcontract was to be performed. (Res. to Def.'s Mot. to Dismiss or Transfer at 2.) However, binding authority provided by Defendants leads the Court to a different conclusion. In In re Fireman's Fund, the former Fifth Circuit held that the Miller Act's venue provisions may be waived by agreement of the parties, as in the case of a valid forum selection clause:

> The Miller Act venue provision exists for the convenience of the parties. Such a provision is subject to variation by their agreement which should especially be given effect where the defendants, for whose special protection the venue clause exists, themselves move for transfer in accord with the forum selection clause.

588 F.2d at 95. The Miller Act's venue provision does not prevent transfer of this case. The forum selection clause overrides it.

## III. Conclusion

For the foregoing reasons, the case shall not be dismissed, and shall be transferred to the United States District Court for the Eastern District of Virginia, Norfolk Division. The clerk is hereby **DIRECTED** to **TRANSFER** this case accordingly. Because the case shall be transferred, the Court will not rule on

16

Defendants' motion for summary judgment and request for oral hearing.[5] (Docs. no. 14, 15.)

**ORDER ENTERED** at Augusta, Georgia, this 25th day of January, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[5] Transferring this case will not require the parties to re-write their pleadings concerning the motion for summary judgment because the parties have wisely cited both Georgia and Virginia law.